# STATE EX REL. CARL W. RYDEEN AND ANOTHER v. WILLIAM H. HOLZ.[1]

February 4, 1927.

No. 25,713.

**Meaning of word "taxes" in section 2211.**

1. Taxes within the meaning of G. S. 1923, § 2211, include the annual instalment assessed for benefits in drainage proceedings.

**When county auditor will not be compelled to certify on deed that taxes have been paid.**

2. Where a deed presented to the auditor for certification contains such a description as might be claimed to include lands which have been sold to the state for delinquent drainage assessments, he may not be compelled to certify thereon that the taxes have been paid.

Deeds, 18 C. J. p. 248 n. 65.
Mandamus, 38 C. J. p. 691 n. 7; p. 785 n. 84.

Relators appealed from a judgment of the district court for Nicollet county, Gislason, J., discharging a writ of mandamus. Affirmed.

*Pfaender & Glotzbach* and *Henry N. Benson,* for appellants.

*George T. Olsen,* for respondent.

HOLT, J.

Mandamus to compel the county auditor of Nicollet county to certify upon a deed presented by relators, the grantees therein, that the taxes were paid upon the land conveyed. From the judgment denying the writ, relators appeal.

The findings and record disclose that in 1915 a drainage proceeding started before the county board, viewers were appointed, their report of assessments for benefits was confirmed on October 4, 1916, and pursuant thereto the auditor fixed the amount of the liens for the benefits assessed. In the drainage area was a meandered lake and the land described in relators' deed is lots 5 and 6 in section 4 and

[1] Reported in 212 N. W. 170.

lot 2 in section 5, all in township 110, range 27, being the fractional subdivisions as per the government survey of land contiguous to the meander line of this lake. The drainage resulted in accretions of 65.75 acres to lots 5 and 6 and 149.08 acres to lot 2, as estimated by the viewers. Instead of assessing the total benefits from the accretions to the government lots to which they attached, the viewers made two additional parcels of the accretions designating them as lots K and L; and the auditor, upon the action of the viewers confirmed by the county board, fixed the liens for the benefits against the several parcels upon the records thus: Lot 5 in section 4, $158; lot 6 in section 4, $395; lot K in section 4, $1,454.31; lot 2 in section 5, $205.40; and lot L in section 5, $3,297.46. All taxes, including the drainage benefits, have been paid upon the lands thus designated, except upon the so-called lots K and L. It is conceded that K and L have been sold and bid in by the state for delinquent taxes.

Before a deed may be recorded G. S. 1923, § 2211, makes it the duty of the auditor to certify thereon that the taxes on the land conveyed have been paid. The first proposition made by relators is that the taxes referred to in that section do not include assessments for benefits under the drainage law. One of the objects of the section, we think, was to prevent the transfer of record of land until the taxes due thereon were paid. The drainage assessments constitute liens upon the lands benefited, collectible in annual instalments as part of the general taxes levied thereon. G. S. 1923, § 6713; State v. Johnson, 111 Minn. 255, 126 N. W. 1074.

The deed involved does not except lot K in section 4 and lot L in section 5, and the grantees, the relators, may well make the claim that a conveyance by the government descriptions as contained in the deed conveys the accretions resulting from the drainage of the lake, namely, the so-called lots K and L. The auditor was not required to determine a dispute of title, nor can the court compel him to do a ministerial act of this sort unless it plainly appears that all taxes upon the land covered by the description in the deed have been paid. Whether the action of the viewers and the county auditor, in respect to the assessment of benefits against not only the govern-

ment lots but also separately against the accretions thereto, has made separate and distinct parcels of the latter, so that now by conveying, for instance, lot 2 in section 5, no part of the 149.08 acres of lot L passes, may not be free of doubt. We therefore are of the opinion that relators are not entitled to the writ.

We are importuned to determine whether lots K and L have been severed from those parts of the government descriptions mentioned to which they would belong as accretions had the viewers and auditor proceeded in the customary way to assess the benefits resulting from draining the lake bed. This we must decline to do, for lots K and L have been bid in at a tax sale by the state and it is not a party to this proceeding, and it would be manifestly improper to attempt now to pass upon a question involving the rights of the state or its assigns. It is also obvious that the county may be interested as to what land the lien attached for the large sums assessed as benefits for the 214.83 acres the owners of the government lots mentioned obtained from the lake bed. The proper parties are not before the court for a determination of the questions sought to be raised by relators.

The judgment is affirmed.