## GLADYS HACKLANDER v. ROBERT L. PARKER.[1]

January 13, 1939.

No. 31,800.

*Putnam & Carlson,* for appellant.
*Frundt & Morse,* for respondent.

PETERSON, JUSTICE.

This is an action to determine the boundary lines between the lands of the parties and to recover damages for trespass. Plaintiff has record title by warranty deed dated August 13, 1936, to lot 7 and the west one-half of lot 8 in a certain block and addition in the city of Blue Earth, according to the plat thereof on file and of record. Defendant has record title to the east one-half of lot 8 and

[1]Reported in 283 N. W. 406.

property adjoining on the east. The boundary line in dispute is the line between the east one-half and the west one-half of lot 8. Plaintiff claims title to the west 5.35 feet of the east one-half of lot 8 by adverse possession thereof by her grantor and herself from 1911 to September, 1937, and that the boundary line between her and defendant's lands is on the east side of the 5.35-foot strip here in dispute. Plaintiff's possession was interrupted by defendant's taking possession of said strip of land in September, 1937, which she claims was a trespass and for which she seeks $50 damages.

Defendant claims title in fee by a tax deed obtained by him from the state on February 10, 1931, based on the 1920 taxes, for which the state recovered judgment upon which the land was bid in for the state at the May, 1922, tax sale, and the same having been forfeited to the state for nonpayment of taxes was sold to defendant at the annual forfeited tax sale in August, 1930. Defendant's land was described in the tax assessments, judgment, sale, and tax deed as the east one-half of lot 8 and tract adjoining, block 1, etc., according to the plat thereof. No notice was taken in any of the tax proceedings or the tax deed of possession of the disputed 5.35-foot strip by plaintiff's grantor. Nor did he by his deed to plaintiff include the same as part of the land he conveyed.

Plaintiff claims that her title was perfected by the adverse possession of her grantor before defendant purchased at the tax sale and that defendant purchased subject to her grantor's rights. Defendant claims that his tax title is superior and paramount to any rights that plaintiff and her grantor may have acquired by adverse possession. She also claims that her grantor having located the lines so as to include the disputed strip in the tract which he conveyed to her, the line is to be taken as he located it without regard to any question as to the title of the land. The court found that plaintiff had good title to the disputed strip by adverse possession and that the defendant was guilty of trespass, and ordered judgment establishing the line along the east side of the disputed 5.35-foot strip and awarded her $25 damages on account of the trespass. Defendant appeals from an order denying his motion for a new trial.

■ Plaintiff's grantor had been in possession of the strip of land in question nine years, from 1911 to 1920, when the lien of the state for the real estate taxes for the year 1920 attached. Taxes are a perpetual lien upon the real estate against which they are assessed, "as against the estate, right, title, interest, claim, or lien, of whatever nature, in law or equity, of every person, company, or corporation whatsoever" (1 Mason Minn. St. 1927, § 2117) until the taxes are paid. *Id.* § 2191. The lien is continued by the judgment entered in the proceedings to enforce the payment of the taxes. *Id.* § 2207. The judgment entered in 1922 preserved and carried forward the lien that accrued in 1920. Under 2 Mason Minn. St. 1927, § 9187, adverse possession can ripen into title only after it has continued for 15 years. But we do not regard that as important here. From 1920 any rights which plaintiff's grantor may have had by adverse possession were subject to the superior rights of the state under the tax lien, the enforcement of which would bar and cut off his rights absolutely. The tax lien was a warning that such a thing might happen. The purchaser at a tax sale derives his title not from the former owner of the land but from the state. A tax title is a new and original grant from the state as sovereign of title in fee, which is paramount as against the world and which supersedes and bars all other titles, claims, and equities. Windom v. Schuppel, 39 Minn. 35, 38 N. W. 757; State v. Camp, 79 Minn. 343, 82 N. W. 645; Oakland Cemetery Assn. v. County of Ramsey, 98 Minn. 404, 108 N. W. 857, 109 N. W. 237, 116 A. S. R. 377. Defendant's tax title terminated and extinguished whatever rights plaintiff's grantor may have acquired by the adverse possession and consequently the title which she now asserts. A tax deed extinguishes the rights of one in adverse possession of land prior to its execution. Patton v. Minor, 103 Tex. 176, 125 S. W. 6. So also it has been held that a tax deed, being a new and independent grant from the sovereign, extinguishes the rights of an occupying claimant to compensation for improvements prior to the date thereof. Board of Regents v. Linscott, 30 Kan. 240, 1 P. 81.

It was suggested that the statute of limitations, 2 Mason Minn. St. 1927, § 9186, operates against the state. The statute applies to

actions by or on behalf of the state, but it has no application to proceedings for the enforcement of taxes on real estate. By 1 Mason Minn. St. 1927, § 2206, there is no limitation of time upon the right of the state to enforce payment of real estate taxes. 6 Dunnell, Minn. Dig. (2 ed.) § 9525; State v. Foster, 104 Minn. 408, 116 N. W. 826; State v. United States Express Co. 114 Minn. 346, 131 N. W. 489, 37 L.R.A.(N.S.) 1127. The other cited sections of the statutes specifically provide that the lien of the state for real estate taxes shall be perpetual and preserved as such in all proceedings for the enforcement of such taxes.

The tax deed prevented plaintiff and her grantor from acquiring any title by adverse possession as against the state and defendant as its grantee.

■ Plaintiff contends that, since 2 Mason Minn. St. 1927, § 9187, permits a claimant of title to land by adverse possession in a boundary dispute case to acquire such title without proof of the payment of taxes on the land involved for five consecutive years during the period in dispute, as is required in other cases, title could be acquired to the disputed strip by adverse possession against one claiming by a tax title. The statute only provides that if a party has a title by adverse possession he can prove it in such a case without showing payment of the taxes, but that is entirely different from saying that he can defeat the state's lien for taxes upon the land or a tax title, by adverse possession. The law is plain that the state's lien for taxes is paramount against every conceivable title, interest, and claim and that the state's lien for taxes shall not be defeated in any manner. The trouble is that plaintiff never had a title by adverse possession as against defendant since the acquisition of such a title was prevented by our tax laws.

■ Plaintiff claims that this is an action to determine the boundary, not to try title, and that a finding that the boundary was established where plaintiff's grantor located the line may be sustained without regard to the title of the strip of land in dispute. The action to determine boundaries, authorized by 2 Mason Minn. St. 1927, § 9590, is not merely to establish the boundary lines according to government survey, but also to determine the boundary

line according to the respective existing rights of property of the parties. It provides that in such action "the court shall determine any adverse claims in respect to any portion of the land involved which it may be necessary to determine for a complete settlement of the boundary lines * * *." The object of the statute is to provide for settling the controversies between adjoining landowners concerning both ownership and boundary lines. Stadin v. Helin, 76 Minn. 496, 79 N. W. 537, 602; Krabbenhoft v. Wright, 101 Minn. 356, 112 N. W. 421; Speer v. Kramer, 171 Minn. 488, 214 N. W. 283. The title to the strip of land in question was involved, and that was to be determined by right of adverse possession. Since plaintiff failed to establish title to this strip of land, she was not entitled to have the line established according to the location thereof by her grantor without regard to defendant's title.

Reversed and new trial granted.