MARTIN N. OLESON v. COUNTY OF CHIPPEWA.[1]

Nos. 34,499, 34,500.

February 6, 1948.

*Sigvald B. Oyen* and *John P. Nelson,* for appellant.
*R. M. Saltness* and *Ernest F. Jacobson,* for respondent.

MAGNEY, JUSTICE.

These are two appeals from judgments in favor of landowner determining that certain assessments for the construction and sub-

---

[1]Reported in 31 N. W. (2d) 432.

sequent repair of county ditch No. 36, Chippewa county, Minnesota, were invalid. .

Martin N. Oleson, petitioner, is the owner of a 240-acre farm in Chippewa county. In 1918, county ditch No. 36 was established and constructed. The construction of the ditch benefited petitioner's lands, and such benefits were assessed as liens against them, payable in annual installments. These installments were included with and paid as a part of the real estate taxes levied against the tracts in each successive year. Prior to September 9, 1942, the county board discovered that a deficiency of $2,271.58 existed in the amount originally assessed for the cost of construction of the ditch. Prior to said date, also, various repairs had been made on said ditch at county expense in the sum of $2,756.74.

On October 7, 1941, the county board met in special session pursuant to call "for the purpose of considering levies for repairs already made and incurred on ditches in county," and on said date voted a levy on county ditch No. 36 at 50 percent of the original cost of the ditch, payable in installments in five years.

On September 9, 1942, the board rescinded the levy made on October 7, 1941, and voted a levy for "various ditch repairs" on county ditch No. 36 at 51 percent of the original construction levy to become payable in seven annual installments. On the same day, the board made an apportionment of $5,028.32 to each of the respective tracts originally assessed for the construction of the ditch, and made, subscribed, and caused to be recorded in the office of the register of deeds a tabular statement of assessment. In so doing, the board assessed petitioner's lands in certain amounts, declared those amounts to be proportionate amounts that said respective tracts were "liable for and must pay for the repair of such ditch," and ordered and directed that said amounts be extended upon the tax lists of said county in installments.

The sum of $5,028.32 so apportioned consisted of items of repairs and expenses aggregating $2,756.74, and one item of $2,271.58, designated in the tabular statement as "shortage in levy for construction."

No notice was given to the affected landowners of the meetings of the county board on October 7, 1941, and September 9, 1942, nor of the actions taken, the apportionment made, and the assessments levied. Included in the various items of expenditures listed in the "Statement showing cost of repair of County Ditch No. 36, Chippewa County," in addition to the item of $2,271.58, "shortage in levy for construction," were several items, totaling $98.34, which expenditures were incurred through the years 1939 to 1941, both inclusive. All the other items of expenditures set forth in the statement were incurred and paid by the county during the period from 1927 to 1933, both inclusive. The court vacated and set aside the proceedings of the board taken and had on October 7, 1941, and September 9, 1942, levying assessments on petitioner's lands. It also abated, vacated, and set aside the tabular statement of apportionment and assessment of cost of repair. The court removed the cloud of the ditch lien imposed by the tabular statement on plaintiff's title to his land.

It is conceded by the county that the assessment for the deficiency in the original cost of construction was improper, and it makes no claim that it can be collected in the present proceedings. Therefore, no consideration will be given to that item.

■ The sole issue to be determined involves the validity of the assessment of $2,756.74 for repairs actually made, which amount is equivalent to 28.05 percent of the original benefits assessed in the construction of the ditch. It seems to be conceded that these repairs were ordinary repairs necessary to keep the ditch properly functioning. It is also conceded that before such repairs were made and the lands assessed for the cost thereof the landowners affected were given no notice or opportunity to be heard. Petitioner contends that failure to give such notice invalidates the levy of the assessment for the cost of these repairs.

Minn. St. 1941, 106.48, subd. 1, provides in part:

"The county board of any county in this state within which is is constructed * * * any state, county, or judicial drainage system

* * * shall keep the same * * * in proper repair and free from obstruction * * * ."

The county board is therefore the body charged with the duty of keeping ditch No. 36 in proper repair and free from obstructions. The quoted statute does not in such case provide for the giving of notice or opportunity to be heard. This section of the statute has no application to repairs which consist of widening, deepening, or otherwise altering or improving the original ditch. Minn. St. 1941, 106.49, covers such a situation. In In re Renville County (State v. McGuire), 109 Minn. 88, 91, 122 N. W. 1120, 1121, this court stated:

"* * * There is a distinction between repairing a ditch, by removing obstructions therefrom, and widening or deepening it. * * *

"If the statute under consideration authorized ordinary repairs only, such as removing obstructions and accumulations of foreign substances in the ditch, we would follow the rule of the Iowa court, and some of the other states, to the effect that provision for notice to the owners of adjoining property is not essential to the validity of the statute. Yoemans v. Riddle, 84 Iowa, 147, 50 N. W. 886. We practically so held in the case of McMillan v. Board of Commrs. of Freeborn County, 93 Minn. 16, 100 N. W. 384, where section 25, c. 258, p. 427, Laws 1901, was construed and upheld, though the precise point does not seem to have been raised. The cost and expense of ordinary repairs, the removal of rubbish and obstructions, if properly made from year to year, would be inconsiderable, and no serious burden to property owners, * * * . And, as suggested, if this statute were so limited, notice would be held unnecessary."

What the court said in the Renville county case may be an indulgence by the court in pure dicta, as suggested by petitioner, but in our opinion it presents a correct statement of the law. Breiholz v. Bd. of Supervisors, 257 U. S. 118, 42 S. Ct. 13, 66 L. ed. 159. See, County of Redwood v. Winona & St. P. Land Co. 40 Minn. 512, 518, 41 N. W. 465, 42 N. W. 473, 475.

■ The repairs here involved were made over a period of several years, and practically all of them more than six years prior to the levy of assessments for the cost thereof. Petitioner contends that the statute of limitations is a bar to the county's right to levy and collect these assessments. Minn. St. 1941, 272.10, the statute in force when these assessments were made, provides:

"Except as hereinafter provided, the right to assess property omitted in any year, or to reassess taxes upon property prevented from being collected in any year, either as authorized and directed by this chapter or otherwise, shall not be defeated by reason of any limitation contained in any statute of this state, and, except as otherwise provided in this chapter, there shall be no limitation of time upon the right of the state to provide for and enforce the assessment and collection of taxes upon all property subject to taxation."

In Hacklander v. Parker, 204 Minn. 260, 262, 283 N. W. 406, 407, this court said:

"* * * The statute [of limitations] applies to actions by or on behalf of the state, but it has no application to proceedings for the enforcement of taxes on real estate. By 1 Mason Minn. St. 1927, § 2206, there is no limitation of time upon the right of the state to enforce payment of real estate taxes. 6 Dunnell, Minn. Dig. (2 ed.) § 9525; State v. Foster, 104 Minn. 408, 116 N. W. 826; State v. United States Express Co. 114 Minn. 346, 131 N. W. 489, 37 L. R. A. (N. S.) 1127."

In State v. Foster, 104 Minn. 408, 409, 116 N. W. 826, 827, the court stated:

"The tax on the land for the year 1895 accrued as a cause of action in favor of the state in January, 1897, and was barred by the statute of limitations before the commencement of this proceeding, unless the time limitation, theretofore existing upon the right of the state to enforce the collection of taxes upon all property subject to taxation, was repealed by section 82, c. 2, p. 40, Laws 1902, which reads as follows: [Minn. St. 1941, 272.10, above quoted]."

The court continues (104 Minn. 410, 116 N. W. 827):

"* * * The language of the statute is clear and specific that there shall be no limitation of time upon the right to enforce all taxes upon all property subject to taxation, * * *."

In State v. Brooks, 183 Minn. 251, 253, 236 N. W. 316, an action brought to enforce the lien of an inheritance tax, the court said:

"* * * The last cited section [Mason St. 1927, 2206] removes the bar of the statute of limitations from the state's right to assess omitted property or to reassess taxes and provides that there shall be no limitation of time upon the right of the state to provide for and enforce the assessment and collection of taxes 'upon all property subject to taxation.' It is the claim of the defendant that, inasmuch as an inheritance tax is not strictly speaking a tax upon property, the bar of the statute still applies thereto. We cannot agree with this construction. The obvious purpose of this section was to make an entire change in the policy of the state in so far as the matter of the statute of limitations, as applied to taxes, is concerned. In the case of State v. U. S. Exp. Co. 114 Minn. 346, 357, 131 N. W. 489, 493, 37 L. R. A. (N. S.) 1127, this court said:

" 'Defendant's contention that § 980 [2206] relates only to the assessment of taxes upon property as such and not to a tax based upon gross earnings, is not substantiated by the language of that section, which is clearly broad enough in its terms to include all taxes due the state.'

"Notwithstanding that it has been held that a gross earnings tax as applied to an express company is a tax upon property and not upon earnings, we think that the language above quoted placed the right interpretation upon the statute and that it removed the bar from all proceedings to collect taxes."

Petitioner makes the claim that an assessment for the cost of repairing a drainage ditch does not come within the terms of § 272.10. If the word "taxes" includes assessments for drainage ditch purposes, then the statute does apply, since, as stated in the

Brooks case, the statute "removed the bar from all proceedings to collect taxes." The statute itself is broad and specific. It states:

"* * * and, except as otherwise provided in this chapter, there shall be no limitation of time upon the right of the state to provide for and enforce the assessment and collection of taxes upon all property subject to taxation."

M. S. A.[2] 106.46 reads in part:

"* * * (instalment and interest) [relative to ditch assessments] shall be collected in the same manner as real estate taxes for that year on the tract in question are collected; * * *."

And further:

"* * * All provisions of law now or hereafter existing in relation to the collection of real estate taxes, so far as applicable hereto, are hereby adopted for the purpose of enforcing payment of such liens and instalments thereof and of the interest thereon and of each of the same, * * *."

Of course the above-quoted provisions simply provide the manner or method of collecting ditch lien assessments and interest on the same. They do not say that such liens are real estate taxes. Neither do they say that they are not taxes. ,

The term "taxes" used in a general way in Minn. St. 1941, 272.10, includes special assessments. In State ex rel. Oakland Cemetery Assn. v. City of St. Paul, 36 Minn. 529, 530, 32 N. W. 781, the court stated:

"* * * An assessment of this kind is a *tax*, the levying of which is an exercise of the taxing power."

In State ex rel. Rydeen v. Holz, 170 Minn. 141, 212 N. W. 170, a drainage ditch assessment was not paid. In a mandamus action against the auditor, the court held that the ditch assessment was included within the term "taxes," so that the auditor could not be compelled to certify that the "taxes" were paid when there was an

---

[2]Minnesota Statutes 1945.

unpaid ditch assessment, and that he properly refused certification. The court said (170 Minn. 142, 212 N. W. 170):

"Before a deed may be recorded G. S. 1923, § 2211, makes it the duty of the auditor to certify thereon that the taxes on the land conveyed have been paid. * * * One of the objects of the section, we think, was to prevent the transfer of record of land until the taxes due thereon were paid. The drainage assessments constitute liens upon the lands benefited, collectible in annual instalments as part of the general taxes levied thereon. G. S. 1923, § 6713; State v. Johnson, 111 Minn. 255, 126 N. W. 1074."

In State v. Johnson, cited *supra,* the court, in speaking about the collection of an installment of a ditch lien assessment, said (111 Minn. 260, 126 N. W. 1076):

"* * * It becomes in effect an item in the general taxes levied against the tract affected, just as do the assessments for township, village, or school purposes, and from that time until paid is regulated by the general tax laws of the state."

In Jacobson v. County of Lac qui Parle, 119 Minn. 14, 18, 137 N. W. 419, 421, assessments levied for drainage ditch benefits are referred to as "a tax imposed to defray the expenses of a ditch."

In Lupkes v. Town of Clifton, 157 Minn. 493, 498, 196 N. W. 666, 668, the court, in speaking of the assessments for benefits following the construction of a drainage ditch, makes the statement:

"* * * B's land becomes just as liable for the payment of the *resulting tax* as it is for the general taxes levied for the support of government. And *that tax* is collected in the same certain manner * * *." (Italics supplied.)

As shown, the collection of general real estate taxes on omitted property is not barred by any statute of limitations. No good reason suggests itself to us why the attempted collection of a tax for the expenditures made by the county in the maintenance of a drainage ditch for ordinary repairs should be barred by the general statute of limitations. The money has actually been paid out

by the county for the benefit of the landowner. It is not a case where a tax is being levied so that the taxing body may expend it in the future.

In the Jacobson case, this court also said (119 Minn. 18, 137 N. W. 421):

"* * * To permit a party to make this defense [a defense other than the statute of limitations] to a tax imposed to defray the expenses of a ditch * * * would often * * * 'result in transferring the burden from those who received all the benefit to those who received none.'"

Unless a county can be reimbursed for the money it has already expended for the benefit of the particular landowner, the general taxpayers of the county will be forced to pay for a service without any benefits being received by them.

We quote again the following part of M. S. A. 106.46:

"* * * All provisions of law now or hereafter existing in relation to the collection of real estate taxes, so far as applicable hereto, are hereby adopted for the purpose of enforcing payment of such liens and instalments thereof * * *."

Minn. St. 1941, 272.10, heretofore quoted, relates to the collection of all property taxes. It states:

"* * * the right to assess * * * shall not be defeated by reason of any limitation contained in any statute of this state, * * *."

And further:

"* * * there shall be no limitation of time upon the right of the state to provide for and enforce the assessment and collection of taxes * * *."

In our opinion, these provisions apply to the collection of ditch lien assessments, as there is nothing to indicate that they are not applicable thereto. If applicable here, the landowner is not entitled to any relief because of lapse of time.

Since this assessment was levied, the law has been changed. L. 1943, c. 632, amended prior provisions and enacted a statute of

limitations applicable to omitted property. Subd. 2 of the amended statute reads:

"Nothing in this act shall authorize the county auditor to enter omitted property on the assessment and tax books more than six years after May first of the year in which the property was originally assessed or should have been assessed * * *."

■ The county board itself filed a tabular "Statement of apportionment and assessment of cost of repair" in the office of the register of deeds. Petitioner contends that the statement is a legal nullity, because a ditch lien attaches only when the auditor makes his statement of the lien and files it with the register of deeds. Minn. St. 1941, 106.48, subd. 2, reads as follows:

"In case there are not sufficient funds to the credit of the drainage system so to be repaired, the county board may pay for the same out of the general revenue fund of the county. To raise the necessary money to reimburse the general revenue fund the county board is hereby authorized to apportion and assess the costs of the repairs upon all lands originally assessed for benefit in proceedings for the construction of the system, * * *."

This statute applies only to ordinary repair and maintenance of drainage ditches. By the wording of the statute itself, no duty is placed upon the auditor. The authorization is given to the county board. No procedure is provided and no duties imposed on anyone. M. S. A. 106.41 requires the auditor to file a statement in connection with the original cost of construction of a drainage ditch. Section 106.54 provides for filing by the auditor of a statement in connection with the assessments for all alterations or improvements which were not ordinary repairs, but prior to 1943, in connection with ordinary repairs (Minn. St. 1941, 106.48), no duties were given to anyone. In 1945, the legislature by M. S. A. 106.485, subd. 2, provided for the filing of a statement by the auditor when ordinary repairs were made, and also made provision for proceeding. In filing its own tabular statement, the county board complied with the statute as it then existed. This act of filing the tabular statement

was merely clerical. If it had been filed by the auditor, it would have also been merely clerical or mechanical. Saxhaug v. County of Jackson, 215 Minn. 490, 10 N. W. (2d) 722. In our opinion, the county board acted within its authority when it apportioned and assessed the cost of repairing the drainage ditch and filed its tabular statement of such expense.

Decision in the case of Teichert v. County of Chippewa, 225 Minn. 406, 31 N. W. (2d) 11, also involves ditch lien assessments. After the county board had levied the assessment in the instant case and before the assessment was levied in the Teichert case, the legislature adopted several amendments.

Judgments reversed.

UPON APPLICATION FOR REARGUMENT.

On March 12, 1948, the following opinion was filed:

PER CURIAM.

Through inadvertence, this court ordered that the judgments be reversed. Involved in the action was an item of the ditch lien referred to as "shortage in levy for construction." On appeal, defendant, as appellant, conceded that the assessment for the deficiency in the original cost of construction was improper and that the trial court was right as to that item. Therefore, as to that item no reversal should have been ordered. The order of this court should have been for a modification of the judgments, not a reversal.

Judgments modified in accordance with original opinion herein.

Aside from above, petition denied.

MR. JUSTICE JULIUS J. OLSON took no part in the consideration or decision of this case.